LUAVASA TAUALA, Claimant

v.

TA'AVASA F. FALESIGAGO TAUALA, Objector

[In the Matter of the Matai Title "TAUALA"
of the Village of Ta'u]

High Court of American Samoa
Land and Titles Division

MT No. 6-88

March 20, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, VAIVAO, Associate Judge, AFUOLA, Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Claimant, Charles V. Ala'ilima
For Objector, Togiola T.A. Tulafono

This controversy began in 1976 when the then-holder of the Tauala title, Tauala Tulaga, announced that he was relinquishing the title in favor of his son Luavasa, who was then about 35 years old. Although such designation by a living matai of his successor (known as *fa'aui le ula*) has its place in the customs of Samoa, it has always been understood that the whole family has the right to decide whether to accept the designee or to choose someone else.

At least some family members believed that Luavasa was not the right choice and that the family had not been given a fair chance to decide. Prominent among these was Laeli Tauala, who believed he himself ought to be the next titleholder. He filed a petition in the High Court alleging that some of the customary formalities incident to accession to a matai title had already been done and that the crucial last step in the process, the fale'ula, would take place shortly.

With the holding of the fale'ula, as the petition pointed out, Luavasa would "become the holder of the above mentioned title in the eyes of the family, the village and the whole Samoa," whether or not he had really been selected by consensus of the family. Laeli therefore requested a temporary restraining order enjoining Luavasa and those in

84

concert with him from holding the fale'ula until the title had been duly registered and any objections resolved.

The High Court granted the restraining order, but the fale'ula was held anyway. Then-Chief Justice Jochimsen held a hearing and concluded that "[d]efendant Luavasa Tauala did disobey the order of this court." The Court therefore ordered Luavasa to refrain from holding himself out as Tauala "or to take any advantages that may flow from being the title holder, nor suggest to anyone, for any reason that the defendant is the title holder pending final disposition of this case . . . ." The order added that if Luavasa disobeyed he would be in contempt of Court. It was signed by the Chief Justice on December 30, 1976.

The case was subsequently referred to the Office of Samoan Affairs for arbitration. Apparently any such efforts were unsuccessful, for about two years later, on March 9, 1979, Laeli offered the Tauala title for registration. There were three objectors: Luavasa Tauala, Ta'avasa Falesigago Tauala, and Logona Tigilau. Meanwhile, however, it appears that Luavasa was using the title and exercising all the functions of Tauala within the family and village.

On or about September 7, 1983, the then-Deputy Secretary of Samoan Affairs wrote a letter to the Territorial Registrar stating that the Tauala case "has been resolved among the parties themselves" and that "[t]he family has agreed that 'LUAVASA TAUALA' shall hold the title of 'TAUALA.'" He added that "all parties affected are advised to . . . finalize their withdrawals." None of the objectors actually filed a withdrawal at that time, however, and Ta'avasa strenuously denies that any such agreement ever took place. Luavasa testified that the alleged resolution occurred not as a result of arbitration at the Office of Samoan Affairs, but at a family funeral. He says that after the funeral the family discussed the title dispute, and that everyone was in favor of him (Luavasa) except Ta'avasa, who finally said that he would do whatever the family wanted. It appears that Luavasa interpreted this as a withdrawal of Ta'avasa's claim and that he or someone else told Samoan Affairs that the case had been resolved. Luavasa must have known there was no final resolution, however, for although he went on using the title he made no attempt to get it registered in his own name.

On October 8, 1984, Laeli did write a letter to the Territorial Registrar withdrawing his claim and stating that it was the will of the family that Luavasa should have the title. (Although the original of this

letter does not appear in the file sent to us by the Registrar, counsel for Luavasa has submitted a copy which appears to be genuine.)

Nothing further happened in the case until December 20, 1988, when the file was unearthed by the Deputy Territorial Registrar. This official noted that according to her "research," two of the objections had not been withdrawn and that the case should have been forwarded to the Court for resolution. (Counsel for Luavasa suggested that the case might have been resuscitated at the behest of someone who was unhappy with Luavasa for opposing the re-selection of Lefiti Fa'afetai, a family member who is one of the principal chiefs on the island of Ta'u, to his position as a Senator from Manu'a. This does appear to be a plausible explanation for the Deputy Registrar's sudden decision to conduct "research" into the case. Whatever her motivation, however, it is clear that Ta'avasa had not withdrawn his objection and that either party has the right to have the case heard by the Court.) On December 23 the Registrar sent the file to the Court.

On the same day, December 23, 1988, Lefiti Fa'afetai brought an action "for himself and on behalf of members of the TAUALA family," seeking an injunction to prohibit Luavasa from holding himself out as Tauala. Lefiti's petition attached a copy of the 1976 injunction.

On January 6, 1989, a hearing was held on Lefiti's petition. Chief Justice Kruse and three Associate Judges found that "the matai title Tauala is vacant, and defendant is holding himself out as the title holder and using the said title." Luavasa was therefore enjoined from using the title Tauala, holding himself out as Tauala, or asserting any authority or doing anything which Tauala would do within and outside of the village of Ta'u, pending final resolution of the title case.

In June 1989 objector Ta'avasa moved to set the Tauala case for trial. The trial was set for December 4, 1989.

In September Ta'avasa moved that Luavasa be held in contempt of Court for continuing to hold himself out as Tauala in violation of the preliminary injunction. On October 17, 1989, a hearing was held on this motion. The Court did find that Luavasa had wilfully violated the injunction. He was sentenced to serve five weekends in the Correctional Facility.

The trial of the matai title case was postponed twice (both times at the request of Luavasa) and was finally held on March 15, 1988.

86

Witnesses for Luavasa were Lieutenant Governor Galea'i Poumele, Tigilau Logona (who has now withdrawn his candidacy in favor of Luavasa), Lautua'a Fulipopo, and Luavasa himself. Witnesses for Ta'avasa were Lefiti Fa'afetai, Vivao Taliese, Fa'agau Lefiti, and Ta'avasa. Ta'avasa also offered into evidence the transcript of a deposition given by Laeli, who was absent from the island on the rescheduled trial date.

The law governing matai titles specifies four criteria on which the Court must make findings in every action for the registration of a matai title. These are (1) the best hereditary right to the title; (2) the "wish of the majority or plurality of those clans of the family as customary in that family"; (3) forcefulness, character, personality, and knowledge of Samoan custom; and (4) value to the family, village, and country. A.S.C.A. § 1.0409.[1]

## I. *Best Hereditary Right*

With respect to the first criterion we find both candidates equally qualified. Each is the son of a former Tauala title holder.

## II. *Family Support*

With respect to the second criterion the Associate Judges are divided. There appear to be three clans in the family, and each candidate appears to enjoy some support from members of each. Two judges would hold that no candidate enjoys the support of the majority or plurality of the clans, since no clan is united in favor of a single candidate. The other two judges would interpret the "majority or plurality of the clans" provision, in light of the Samoan traditions upon which it is based, to mean that a clan should be counted in support of a

---

[1] This case also involves the application of A.S.C.A. § 3.0241(b). That section provides that in the event of a difference of opinion among the Associate Judges in a matai case, the presiding justice shall abstain and the opinion of a majority of the Associate Judges shall prevail. Only in the event of a tie among the Associate Judges does the presiding Justice cast a vote.

In the present case the four Associate Judges, after extensive deliberations, were evenly divided with two votes for Luavasa and two for Ta'avasa. The presiding Justice then proposed to send the matter back to the family for further deliberations. This proposal was defeated by a vote of 1 to 4, with all four Associate Judges voting in the negative. The presiding Justice then cast his vote as required by A.S.C.A. § 3.0241(b).

candidate if that candidate clearly has more support within a clan than any other candidate.

Even on the assumption that the latter interpretation is correct, however, the evidence of clan support is mixed. At two family meetings, one held in April 1989 and the other about two weeks before the trial in March 1990, the clear majority of the speeches were in favor of Luavasa. His supporters included prominent representatives of all clans. On the other hand, Ta'avasa contends that the meetings were called by supporters of Luavasa and that many of his supporters were not invited. At trial Ta'avasa presented prominent members of all three clans as witnesses on his behalf; so did Luavasa.

Similarly, each candidate has submitted lists of what purport to be the signatures of family members supporting him for the title. Luavasa's petitions contain about 500 names, Ta'avasa's only about 100. Most of Luavasa's signatures, however, do not appear to be genuine. Some people signed more than once, and almost every page contains groups of five or ten names written in the same handwriting. Ta'avasa's petition also contains some instances in which one person appears to have written several "signatures," but a far higher percentage of his signatures appear to be genuine. (Luavasa examined the Ta'avasa petition and admitted that the signatures appeared to be those of blood members of the family, but complained that some of the names were also on his own petitions.) Nor does the evidence show to which of the clans the various signatories belong or how the numbers of signatures compare to the total number of members in any clan.

The difficulty of assessing family or clan support is compounded by the fact that Samoan families traditionally make decisions not by pure majoritarian democracy but by consensus. We cannot merely count names or speeches, but must attempt to gauge the breadth and depth of support for each candidate within the family and its clans.

In this case there is an added complication. Within any Samoan family's decision making process it is traditional to show great deference to the opinions of ranking family members, and particularly to the senior matai. It is therefore not clear how many of those who expressed support for Luavasa did so not because they believe he is or will be a good Tauala but because, having undergone a saofa'i and a fale'ula, he *is* the Tauala "in the eyes of the family, the village and the whole Samoa," and they therefore regard themselves as bound to support him. Since Luavasa seized this tremendous strategic advantage in defiance of

88

numerous statutes and court orders --- by holding a fale'ula and exercising the functions of Tauala while other candidates' claims were still pending --- it is practically impossible to make a fair and accurate comparison of his support with that of Ta'avasa.

In this connection it is noteworthy that Laeli, who at some time after 1979 assumed the title Tunupopo, now supports Ta'avasa rather than Luavasa. Tunupopo is the matua or elder statesman of the family, who would ordinarily have much of the responsibility for looking after family affairs in the absence of a senior matai. (Unfortunately, Tunupopo Laeli now spends most of his time in California. He says this is for medical reasons and is temporary. In any case, Laeli is recognized as Tunupopo by all factions within the family and has not been asked to vacate the title since he went to California.) Laeli says that not only he but also "many people in the family . . . supports and would like for Foutu'ua [Ta'avasa] to succeed and to take over the title in the family." We cannot ignore this assessment by the matua of the family.

On the other hand, a finding that Ta'avasa enjoys majority or plurality support would be at odds with the evidence that a large number of family members from all clans do regard Luavasa as the Tauala and support him as such. It also appears that at least some family members, including members of high rank such as Lieutenant Governor Galea'i, strongly support Luavasa on his own merits and not just because of his formal investiture with the title. Other prominent members of the family, including not only Laeli but also former Senator Lefiti, are equally strong in opposition to Luavasa.

On balance we conclude that neither candidate has proven a better right than the other on the issue of clan support.

### III. Forcefulness, Character, Personality, and Knowledge of Samoan Custom

With regard to forcefulness, character, personality, and knowledge of Samoan custom, the picture is also quite hazy. Luavasa is clearly the more forceful and dynamic of the two candidates. He might also have demonstrated the superior knowledge of Samoan custom had he not been cursory and evasive in many of his answers to questions (both in his testimony and on his candidate questionnaire) about custom within the family and village. On the record as it stands, both candidates demonstrated an adequate knowledge of Samoan custom. Luavasa's personality is characterized by charm, intelligence, sophistication, and

oratorical skill in both Samoan and English. Ta'avasa is a quiet and humble man.

Unfortunately, however, the evidence casts serious doubt on Luavasa's character. Certain matters raised by opposing counsel on cross-examination raise questions about this candidate's respect for the law, about his willingness to tolerate people who disagree with him, and about his honesty. These matters include at least two and probably three convictions by military courts martial. There is also Luavasa's role as a principal participant in the illegal installation in 1986 of a person other than the lawful holder of the Sotoa title as Sotoa within the village of Ta'u. Luavasa's testimony on these incidents was deeply troubling not only because of the substance of the incidents themselves but also because of the way Luavasa reacted when asked about them.

Perhaps most disturbing was Luavasa's testimony with regard to the convictions by military tribunals:

> Q. BY MR. TOGIOLA: You mentioned in your direct testimony that you spent eight years in the mainland and spent some time in the United States. One of the criteria here, sir, is your value or your character. When you were in the United States, were you ever convicted of any crime?
>
> A. [BY LUAVASA TAUALA:] I had traffic ticket citations.
>
> Q. I only asked of any crimes. How about the time when you were in the service? Were you ever convicted by a special court martial or some other judicial authority in the military?
>
> A. No.
>
> Q. Do you remember on April 24, 1968, while you were in the military service stationed in San Diego whether or not you were convicted by a special court martial for violation of the Uniform Code of Military Justice Article 86?
>
> A. There was but it was a summary court martial.

90

Q. Wasn't that --- wasn't that October 24 of 1967 that you were found guilty by a summary court martial?

A. I do not know the exact date, but it was 1968.

Q. Well, do you deny that you were convicted by summary court martial on October 24, 1967?

A. I do not recall. I do not remember except the summary court martial in 1968.

Q. Do you remember the offense you were charged with in that summary court martial?

A. I guess it was lateness to work without leave.

Q. You don't remember being convicted in 1967 of making a --- filing a false report, false statement with intent to deceive in violation of Uniform Code of Military Justice Article 7?

A. I do not remember.

Q. Do you remember being in court martial in 1972 just before you left service on February 18?

A. Yes. I remember maybe it was '71 or '72.

Q. So your answer to my first question then that you were never convicted of any offenses in the military is wrong?

A. I do not remember.

Asked later by his own counsel to explain the two convictions to which he had admitted, Luavasa said only (1) that it all happened because he had to stay home with his children because they were sick and (2) that a doctor and a minister had testified for him. It is most unlikely that this is the whole explanation for even one of the courts martial, much less for the two to which he eventually admitted or the third which he does not deny but "does not remember." Despite repeated questioning the court never even found out for sure what the charges were. Luavasa seemed determined not to admit anything that the Court or opposing

91

counsel did not already know. Indeed, it is hard to explain his initial denials that he had ever been convicted as anything but outright lies under oath.

With respect to the Sotoa incident, Luavasa testified that under Samoan custom he had no choice but to recognize the person who had been installed according to the traditional formalities. (The Sotoa case was almost identical to the illegal Tauala installation in 1976, with the added dimension that the saofa'i and fale'ula in that case were on behalf of a candidate who had already sought the title in Court and lost to someone else.) The Court pointed out to Luavasa that during the court hearings resulting from the Sotoa incident, the illegal Sotoa claimant had testified that these formalities would never have been held but for an ultimatum from the village council. (The testimony was that the village council had given the family three weeks to come up with a new Sotoa or have the title excluded from the village.) Luavasa's response to this question --- as to other questions about his role in the exclusion of various chiefs from the village council and other conflicts within the village --- was that there are many members of the village council. Why do people always assume, he asked, that Luavasa is the ringleader?

In the Sotoa trial his testimony was quite different. There, in support of the illegal claimant's position that he had violated a Court order only because the village council had ordered him to do so, Luavasa testified that "I, myself was the spokesperson" who had proposed the ultimatum to the Sotoa family. Transcript of Proceedings held 8/19/86, *Sotoa v. Sotoa*, AP No. 20-86, pp. 68-69.

These were not the only false or devious answers given by Luavasa. Indeed, some of these falsehoods or evasions were totally pointless, since a truthful answer would have done Luavasa little or no harm. On his candidate questionnaire, asked to list all the holders of the Tauala title, he listed only his own father. At trial he testified concerning numerous other title holders. Asked to explain the inconsistency, he said his father was the only Tauala he had ever seen and he had not wanted to testify about things he did not see. (In fact it appears that he did not much care what he wrote down on his questionnaire. His original answer to two of the most important questions was that he would answer when he got to Court. The whole point to the questionnaire, of course, is to let the parties and judges know each party's answers well before they get to Court.) His testimony at the contempt hearing in October was characterized by similarly far-fetched and self-serving rationalizations.

For all this, we do not believe that Luavasa is an altogether bad person or that he could never serve well as a matai. He is not only highly intelligent but also competent and industrious. At most times during his testimony he displayed a most pleasing disposition.

Nevertheless, the incidents we have discussed and his explanations of them reflect a deeply disturbing pattern: repeated disobedience to lawfully constituted authority; subsequent attempts to evade the consequences of his actions, often by saying he was only a humble servant doing the will of others; a certain arrogance and ruthlessness when challenged. And it seems the truth is just not in him.

Ta'avasa, while not as dynamic as Luavasa, is not without talents and accomplishments. He served for many years as a schoolteacher and in various government positions, including a term in the Fono. He has long been active in family affairs, and was also active in village affairs before being expelled from the village council after a dispute with Luavasa. He is, in the words of Laeli, "peaceful and he speaks honestly."

The one negative piece of evidence about Ta'avasa is that for sixteen years or so he has been using an unregistered matai title, Foutu'ua. As a former legislator he should be aware of A.S.C.A. § 1.0414, which makes it a crime for anyone to use a matai title without first having registered it according to law. There is no evidence, however, that his failure to offer the title for registration was part of a scheme to defeat the rights of other claimants or for any other reason than carelessness.

On the criterion of forcefulness, character, personality, and knowledge of Samoan custom, therefore, we find that Ta'avasa prevails.

*IV. Value to the Family, Village, and Country*

As always, our analysis of the criterion of value to family, village, and country is informed by many of the factors that have gone into our findings on the first three criteria. The relative value of the two present candidates to the family, village, and country would depend heavily on circumstances. If the family, village, or country needed someone to lead them in battle, it would almost certainly want Luavasa; if the need were for a trustworthy administrator and a neighbor with whom to live in harmony, Ta'avasa would be better.

The need at present is for a man of peace. The evidence establishes that the family and village are deeply divided and that Luavasa has been part of the problem. The likely result if Luavasa were selected would be more settling of old scores and the further alienation of potentially useful members of the family and village, all in the name of the finagalo or general will.

There is also a risk posed by a selection of Ta'avasa: the risk of a protracted conflict such as has characterized the Sotoa controversy, in which the matai lawfully selected in accordance with A.S.C.A. § 1.0409 is a different person than the one who has undergone the saofa'i and fale'ula. Since, however, this risk was occasioned by the acts of Luavasa, and since Luavasa and his supporters have it entirely within their power to avert such a conflict, it would be unjust to count it against Ta'avasa.

Finally, we note that Ta'avasa is ten years older than Luavasa, a factor traditionally taken into account in assessing a candidate's value to the family, village, and country.

Accordingly, we find for Ta'avasa on this criterion.

V. *Conclusion*

For the reasons stated, we find that neither candidate prevails on the first or second criterion and that Ta'avasa prevails on the third and fourth criteria. Ta'avasa F. Falesigago Tauala has therefore shown a superior right to hold the title Tauala.

This is not to say that Luavasa has nothing to offer to his family and to Samoa. At the trial he promised to accept Ta'avasa as Tauala if the Court should so decide. By giving such acceptance generously and without reservation and thereby helping to effect a reconciliation within the family, Luavasa would provide powerful evidence that he has learned well from past mistakes. If he should also reconcile with his past adversaries within the village and get through a year or two without violating any court orders, it seems extremely likely that a man of Luavasa's intelligence and diligence will be given other important opportunities to serve.

Judgment will issue ordering the registration of the name "Tauala" in the name of Ta'avasa Falesigago F. Tauala.

It is so ordered.